[L. A. No. 8863. In Bank.—December 1, 1925.]

## JOSEPH W. DEUPREE, Petitioner, v. H. A. PAYNE, as County Auditor, etc., Respondent.

[1] COUNTIES—EMERGENCY ORDINANCES—LAW GOVERNING.—Where the charter of a county is silent as to the powers of the board of supervisors in the matter of the passage of emergency ordinances, the county is governed in that respect by general law.

[2] ID.— FORM OF ORDINANCE — DECLARATION OF EMERGENCY. — Under the provisions of the Political Code, in passing an emergency ordinance, a board of supervisors is required to state in the ordinance the particular emergency, the existence of which is required to enable it to enact said ordinance as an emergency and to have it go into effect at once, and if the emergency does not in fact or in law exist, the board has no power to enact the ordinance, so as to make it become effective prior to the expiration of the thirty-day period provided for the taking effect of other than emergency ordinances.

[3] ID.—LONG BEACH—ESTABLISHMENT OF MUNICIPAL COURTS—JURISDICTION OF JUSTICES OF THE PEACE—EMERGENCY ORDINANCE.—As the establishment of a municipal court in the city of Long Beach did not affect the offices of the justices of the peace of the township which included said city or deprive them of jurisdiction of that township in the territory outside the city, said justices of the peace did not become judges of said municipal court, and the erroneous declaration in an emergency ordinance of the board of supervisors purporting to abolish said township and said offices, that such justices would become judges of said municipal court, and that it was therefore necessary for the ordinance to take immediate effect to preserve the public peace, health, and safety,

---

1.   See 7 Cal. Jur. 418.
2.   See 7 Cal. Jur. 469.

could not furnish the basis for having the ordinance take immediate effect.

[4] ID.—CHANGE OF TOWNSHIP—ABOLITION OF JUSTICE'S COURT.—The board of supervisors of a county has the power to change the boundaries of townships in the county and to abolish the justice's court thereof.

[5] ID. — INCUMBENCY OF JUSTICES OF THE PEACE — CONSTRUCTION OF ACT OF 1925.—The provision of section 416 of the Political Code that the provisions of sections 4041 and 4015 of said code shall not affect any incumbent of the office of justice of the peace or constable is abrogated by the general provisions of the act of 1925 (Stats. 1925, p. 648), in so far as it affects justices of the peace in townships lying wholly within the boundaries of municipalities which have established municipal courts, for as to such townships the office and the officer both cease to exist upon the establishment of such municipal courts.

[6] ID.—RIGHT TO OFFICE.—There is no vested right in an incumbent to an office, nor any property right therein paramount to the public interest.

---

(1) 15 C. J., p. 470, n. 96 New.    (2) 15 C. J., p. 473, n. 32 New. (3) 15 C. J., p. 473, n. 32 New; 35 C. J., p. 456, n. 86 New.    (4) 35 C. J., p. 455, n. 71; 38 Cyc., p. 604, n. 84, 94.    (5) 35 C. J., p. 456, n. 86 New.    (6) 29 Cyc., p. 1368, n. 53 New.

APPLICATION for a Writ of Mandate to compel an Auditor to approve a judgment for salary of a Justice of the Peace.    Writ granted.

The facts are stated in the opinion of the court.

Clarke & Bowker for Petitioner.

Edward T. Bishop, County Counsel, and Charles E. R. Fulcher, Deputy County Counsel, for Respondent.

RICHARDS, J.—The petitioner herein by his original application applied for a writ of mandate to be directed to the respondent herein in his capacity as county auditor of the county of Los Angeles, commanding him to audit and approve the petitioner's claim and demand for the sum of seventy dollars, alleged to be the salary due and payable to petitioner as justice of the peace of Lankershim township

---

4.  See 7 Cal. Jur. 456.
6.  See 21 Cal. Jur. 821; 22 R. C. L. 377.

of the county of Los Angeles for the month of July, 1925, and which said sum the respondent as such auditor has refused to audit, approve, and allow in its entirety. The particular facts upon which said application is based and is resisted are embraced in the stipulation of the parties hereto as to the facts of the case, which reads as follows:

"Prior to July 23, 1925, there existed in the County of Los Angeles, State of California, a judicial township named Lankershim Township, and the same now exists unless abolished by Ordinance No. 1320, New Series, or Ordinance No. 1321, New Series, of the Board of Supervisors of the County of Los Angeles. Prior to July 23, 1925, Petitioner was the duly elected, qualified and acting justice of the peace of said Lankershim Township and continued as such during the entire month of July, 1925, unless his status was affected by said ordinances or either of them. That on July 23, 1925, the Board of Supervisors of Los Angeles County duly and regularly, by a four-fifths vote, adopted Ordinance No. 1320, New Series, and Exhibit 'A' of Respondent's Return herein is a true copy of said Ordinance No. 1320, New Series; that on July 24, 1925, the Board of Supervisors of Los Angeles County duly and regularly, by a four-fifths vote, adopted Ordinance No. 1321, New Series, and Exhibit 'B' of Respondent's Return herein is a true copy of said Ordinance No. 1321, New Series; that each of said ordinances purported to re-district the County of Los Angeles into judicial townships, and by the terms of each of said ordinances Lankershim Township was abolished. On July 24, 1925, there was established in the City of Long Beach a municipal court, at which time the City of Long Beach lay partly within and partly without Los Angeles Township and one or more other judicial townships. The salary of the justice of the peace of Lankershim Township was and, if said township is still in existence, is Seventy Dollars ($70.00) per month. At all times in Petitioner's Petition mentioned Respondent was the duly appointed, qualified and acting County Auditor of the County of Los Angeles, State of California. On the 3rd day of August, 1925, Petitioner presented his demand in due form to Respondent for his salary during the entire month of July, 1925, and Respondent then and there refused, has ever since refused and still refuses to audit and approve said claim of salary in the full amount,

but has audited and approved said claim of salary except as to the sum of Eighteen and 07/100 ($18.07) as such salary from July 24, 1925, to July 31, 1925, inclusive.''

On October 13, 1925, the petitioner herein presented and filed a supplemental petition wherein he also applied for a writ of mandate for the payment of his salary as such justice of the peace of such township for the month of August, 1925, his claim and demand for which the respondent herein had also refused to allow and approve. There is on file a stipulation by the parties hereto that the facts alleged in said supplemental application are true.

Dealing first with the petitioner's original application herein, the first question with which we are confronted concerns the effect to be given to the two ordinances adopted by the board of supervisors of the county of Los Angeles purporting to redistrict the townships of Los Angeles County. These two ordinances are identical in terms and only differ as to the respective dates of their adoption by said board. We do not deem it necessary to determine in this proceeding any nice question as to whether the first of these two ordinances was in all respects effective by reason of the fact that it was adopted by said board one day before the legislative act of 1925 (Stats. 1925, p. 648) was to go into effect, since if the first of said two ordinances was subject to any defect on that account the second of said ordinances in identical terms was not. We shall therefore deal only with the second of said ordinances in dealing with the merits of the instant proceeding in so far, at least, as it relates to the petitioner's original application herein.

The ordinance of the board of supervisors, adopted July 24, 1925, in so far as it refers to Lankershim township, purports to abolish said township, and impliedly, at least, to also abolish the office of the justice of the peace of said former township, by declaring therein that the justices of the peace of Los Angeles township to which the territory of Lankershim township was added should be the successors of the justice of Lankershim township. Said ordinance as to the nature thereof and as to the time when its provisions should take effect contained the following declaration:

''Section 30. This ordinance shall take effect immediately upon the passage hereof because the adoption and enforcement thereof is necessary for the immediate preservation

of the public peace, health and safety, in that on July 24, 1925, there will be established in the City of Long Beach, County of Los Angeles, State of California, a municipal court, and by virtue of the provisions of the law pertaining to the establishment of such municipal court, the justices of the peace of Los Angeles Township will become the judges of the municipal court of Long Beach, thus depriving Los Angeles Township of any justice court or justices' courts, or justice of the peace, or justices of the peace.''

[1] The first question which the foregoing state of the record presents is as to the time when the said ordinance of the board of supervisors must be held to have gone into effect. The county of Los Angeles is and ever since the year 1913 has been operating under a charter form of government adopted by the people thereof and approved by the legislature in that year (Stats. 1913, p. 1484). The said charter of said county is, however, silent as to the powers of the board of supervisors in the matter of the passage and adoption of emergency ordinances, and the said county is therefore governed in that respect by general law. The general law upon that subject is embraced within the terms of section 4058 of the Political Code as enacted in the year 1911, which reads in part as follows:

''No ordinance passed by the board of supervisors, except when otherwise specially required by the laws of the state, and except an ordinance for the immediate preservation of the public peace, health or safety, which contains a statement of its urgency and is passed by a four-fifths vote of the board, and no ordinance granting a franchise shall go into effect before thirty days from its final passage; . . . ''

[2] In conformity with the above-quoted provision of the Political Code the said board of supervisors undertook to adopt their ordinance of July 24, 1925, as an emergency ordinance and to give the same immediate operation and effect. In order to comply with said provision of the Political Code the board was required to state in said ordinance the particular emergency, the existence of which was required to enable them to enact said ordinance as an emergency ordinance and to have the same go at once into effect. If such emergency did not in fact or in law exist it should require no argument to show that the said board would have no power to enact such ordinance so as to have the same become effec-

tive prior to the expiration of the thirty-day period provided
for the taking effect of other than emergency ordinances.
It was in fact so held in the case of *In re Hoffman,* 155 Cal.
114 [132 Am. St. Rep. 75, 99 Pac. 517].   **[3]**   The particu-
lar emergency which the said board specifies in that por-
tion of their said ordinance which is above quoted is this:
"That on July 24, 1925, there will be established in the
City of Long Beach, County of Los Angeles, State of Cali-
fornia, a municipal court, and by virtue of the provisions of
the law pertaining to the establishment of such municipal
court, the justices of the peace of Los Angeles Township will
become the judges of the municipal court of Long Beach, thus
depriving Los Angeles Township of any justice court or jus-
tices' courts, or justice of the peace or justices of the peace."
.This court has held in the case of *Bakkenson* v. *Superior
Court, ante,* p. 504 [241 Pac. 874], that no such result as a
matter of either law or fact has followed, or could follow,
from the establishment of the municipal court of Long Beach
so as to affect those townships which upon the date referred
lay partly within and partly without the city of Long Beach,
at least as to such portions thereof which lay without the
boundaries of such municipality and that as to such latter
portions thereof the offices and jurisdiction of the justices
of the peace thereof still continued to persist.   This being
so, the particular emergency which the said board of super-
visors specified in their said ordinance as comprising the
emergency feature thereof was nonexistent upon the date
of the passage and approval of said ordinance, and, being
so, it could not furnish the basis upon which alone an emer-
gency ordinance having immediate operation and effect could
be enacted under the foregoing provision of the Political
Code.   Not, therefore, being the subject of enactment as an
emergency ordinance upon the ground stated therein, such
ordinance could not become effective until the expiration of
the thirty-day period fixed by said provision of the code;
and this being so, it follows that the petitioner was in nowise
affected by the terms of said ordinance during the period
of thirty days intervening between the date of its enactment
and the statutory date when it became effective; and from
this it follows that the petitioner herein was entitled to the
whole of his salary as justice of the peace for Lankershim
township for the month of July, 1925, and is now entitled

to have a writ issue in accordance with the prayer of his original application.

[4] When we come to consider the supplemental application of the petitioner filed herein on October 13, 1925, a number of much more serious problems are presented. Assuming that the ordinance of the board of supervisors of Los Angeles County adopted on July 24, 1925, became effective thirty days thereafter, it follows that such ordinance was in full force and effect on August 23, 1925, and continued to be in force and effect thereafter. If the effect of said ordinance is to be stated therein, viz., the abolition of Lankershim township as of the date when said ordinance became effective, it would follow that Lankershim township and hence the justice court of Lankershim township ceased to exist upon the said date when such ordinance took effect. It may not be doubted that the board of supervisors of Los Angeles County possess the power to change the boundaries of townships within their county as convenience requires. Section 4041 of the Political Code, which has relation to the general jurisdiction and powers of boards of supervisors, grants the said board that power. Subdivision 2 of said section, granting such power, reads as follows: "2. To divide the counties into townships, election, school, road supervisor, sanitary, and other districts required by law, change the same, and create others, as convenience requires." Section 4015 of the Political Code, which has relation to township officers, contains the same grant of power, reading as follows: "The board of supervisors of each county, as public convenience may require, shall divide their respective counties into townships for the purpose of electing justices of the peace and constables; provided, however, that in the establishment of townships that may be hereafter established no incorporated city shall be divided so as to lie partly within one township and partly within another." In the same article, however, in which the foregoing section appears and immediately following it is section 4016, which reads as follows: "The provisions of this article shall not affect any incumbent of the office of justice of the peace or constable."

That the foregoing two sections of the Political Code are to be read together and that so read the latter section places a definite limitation upon the power of boards of supervisors to so change the boundaries of townships as to affect the in-

cumbency of the justice of the peace of any township, the boundaries of which have been changed, would seem too plain for argument. As these sections of the Political Code stood, therefore, prior to July 24, 1925, and had they remained unaffected by any legislation having effect on and after said day, the office and hence the salary of the petitioner herein would have been unaffected thereby. On the twenty-fourth day of July, 1925, however, the act of the legislature (Stats. 1925, p. 648) went into effect. The purpose of this act was unquestionably to comply with the mandate of the recent constitutional amendment providing for the creation of municipal courts and directing the legislature to provide by general law for the establishment, constitution, regulation, government, and procedure of municipal courts. Both the constitutional amendment and the act in question provide for radical changes in those townships and township justices' courts in counties wherein one or more municipalities exist which are qualified by population to establish municipal courts and which shall proceed to establish the same as to townships lying wholly within such municipalities. Justices' courts cease to exist and the justices thereof either become judges of the municipal courts, or, if disqualified to so become, cease to be and function as justices of the peace. As to townships lying partly within and partly without the boundaries of such municipalities, the territorial jurisdiction of the justices of the peace thereof is or is likely to be materially affected by the assertion of the jurisdiction of such municipal courts over that portion of the territory of such townships as may lie within such municipalities (*Bakkenson* v. *Superior Court, supra*). A condition was or was likely to be thus created which would require an extensive exercise of the powers of boards of supervisors over the subject of the changing and readjustment of the boundaries of townships within such counties as were to be affected by the going into effect of said constitutional amendment and of the said act passed for the purpose of putting the same into full operation and effect. It would seem that the powers of the governing body of the county should be plenary in the foregoing regard in order to give such full effect thereto as the exigencies of the particular situation might require, and that such was the purpose of the legisla-

ture in placing in said legislative act section 23 thereof, we
entertain no doubt.   Said section reads as follows:

"Whenever a municipal court is established for any city
which lies partly within and partly without one or more
judicial townships, the board of supervisors of the county
within which the municipal court is established shall im-
mediately by ordinance divide such county into judicial town-
ships are (as) public convenience may require."

[5]   While it is true that the act of which the foregoing
section forms a part does not in express terms purport to
repeal any particular portions or sections of the Politi-
cal Code, it is obvious that such is the effect wherever
the provisions thereof are operative to effectuate changes
in townships and township justices' courts and the justices
of the peace who are the incumbents thereof in all counties
within the city or cities and counties of which municipal
courts may be established.   The provision of the Political
Code above quoted relating to justices' courts and the in-
cumbents thereof are obviously abrogated by the general pro-
visions of the act of 1925, in so far as they affect justices of
the peace in townships lying wholly within the boundaries
of such municipalities, for as to such townships the office and
the officer both cease to exist.   If the general provisions of
said act are thus far operative, we can see no reason why
the particular provisions of section 23 of said act should not
also be operative as to all townships and township justices'
courts and the justices thereof which may be affected to a
greater or less degree by the putting into effect of the pro-
visions of the entire act.   The present case furnishes an apt
illustration of the very matter under review.   Lankershim
township has apparently been so far affected by the present
or impending changes in the township boundaries and the
territorial and other jurisdiction of the justices of the peace
of those other townships of Los Angeles County which lie
in whole or in part within the boundaries of the cities of
Long Beach and Los Angeles as to render it no longer ex-
pedient or practicable that said Lankershim township should
exist as a separate entity in the government of Los Angeles
County.   These consequences have been the direct result of
the establishment of municipal courts in the two munici-
palities above referred to, and, such being so, we must assume
that the occurrence of just such results was within the con-

templation of the legislature in the adoption of the legislative act in question and that it was therefore the intent of the legislature in the insertion therein of section 23 thereof to provide for such contingencies by reposing in the board of supervisors of counties thus affected such plenary power to deal with township and township justices' courts therein and the officers thereof as to render fully effective the extensive readjustments contemplated by the constitutional amendment and the act passed in pursuance thereof. That such boards of supervisors in so dealing with such a situation could entirely abolish a particular township we have no doubt, and that by so doing they could also do away with the justice's court formerly existing therein, we have also no doubt, and if in so doing the effect thereof was to put out of being both the office of justice of the peace and the incumbent of such office in his official capacity, we can perceive no obstacle in the way of such a consequence, since **[6]** it is well settled that there is no vested right in an incumbent to an office, nor any property right therein paramount to the public interest (*Miner* v. *Solano County*, 26 Cal. 116; *McKannay* v. *Horton*, 151 Cal. 711, 719 [121 Am. St. Rep. 146, 13 L. R. A. (N. S.) 661, 91 Pac. 598]; *Boyd* v. *Pendegast*, 57 Cal. App. 504 [207 Pac. 713]).

We do not deem it necessary to consider any other points discussed by respective counsel in their briefs presented herein, since the following is our conclusion from the foregoing considerations, viz.: That as to the salary of the petitioner herein for the entire period of the month of July, 1925, he is entitled to a writ as prayed for in his original petition herein; and that the petitioner is further entitled to his salary as prayed for in his supplementary petition herein for such portion of the month of August, 1925, as lay within the period between the passage of the aforesaid ordinance of the board of supervisors adopted on July 24, 1925, and up to the time when such ordinance is herein held to have gone into effect.

Let a writ issue in conformity with the views expressed in this opinion.

Myers, C. J., Lawlor, J., Shenk, J., Lennon, J., Seawell, J., and Waste, J., concurred.